**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **PHYLLIS HARPER,** § | |
| § | |
| **Plaintiff,** § | |
| § | **Civil Action No. 3:04-CV-2211-K** |
| v. § | |
| § | |
| **COMMISSIONER OF SOCIAL SECURITY,** § | |
| § | |
| **Defendant.** § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and an Order of the Court in implementation thereof, subject cause has been referred to the United States Magistrate Judge. Before this Court are *Plaintiff's Opening Brief*, filed March 28, 2005, *Defendant's Response to Plaintiff's Opening Brief and Memorandum in Support of Motion for Summary Judgment*, filed May 27, 2005, and *Plaintiff's Reply*, filed June 27, 2005. Having reviewed the evidence of the parties in connection with the pleadings, the undersigned recommends that the decision of the Commissioner be **REVERSED** and that this case be **REMANDED** for further consideration.

## I.   BACKGROUND[1]

*A.   Procedural History*

Phyllis Harper ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Titles II and XVI of the Social Security Act. On August 29, 2000, Plaintiff filed applications for disability

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

benefits under Title II of the Social Security Act and Supplemental Security Income disability benefits under Title XVI of the Social Security Act. (Tr. at 53-55; 245-46.) Plaintiff claimed she was disabled due to scoliosis, arthritis, hypertension, and bleeding ulcers. (Tr. at 93.) Plaintiff's application was denied initially and upon reconsideration. (Tr. at 23-29; 32-35). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 29.) A hearing, at which Plaintiff personally appeared and testified, was held on September 18, 2001. (Tr. at 260-91). On April 10, 2002, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 9-18.) The Appeals Council denied Plaintiff's request for review. (Tr. at 5-7.) Plaintiff then brought this timely appeal to the United States District Court pursuant to 42 U.S.C. § 405(g).

### B.   *Factual History*

1. Age, Education, and Work Experience

Plaintiff was born on July 4, 1950. (Tr. at 53.) She completed college. (Tr. at 264.) *Id.* Her past relevant work experience includes employment as a substitute teacher, debit manager, and director of public relations. (Tr. at 286.)

2. Medical Evidence

On November 19, 1999, Plaintiff was seen at Methodist Hospital to assess her gastric ulcer. (Tr. at 164.) An esophagogastroduodenoscopy with biopsy was performed. *Id.* The ulcer was healed with mild swelling in the anterior folds. *Id.* The biopsy showed reactive gastropathy with edema, but no signs for Helicobacter pylori. *Id.* Plaintiff was to continue taking Prevacid but was given no dietary restrictions. *Id.*

Plaintiff presented to the emergency room at St. Paul Medical Center on January 30, 2000, with gastrointestinal bleeding. (Tr. at 136-61.) While Plaintiff was in the hospital, an endoscopy

was performed. (Tr. at 138.) Plaintiff had a 1.5 cm. ulcer. *Id*. The doctor's impression was upper gastrointestinal bleed, secondary to antral ulcer, and hypertension. *Id.* Biopsy revealed mild chronic inflammation but no ulceration, malignancy, dysplasia or Helicobacter pylori. (Tr. at 156.) As Plaintiff had discontinued Prevacid following a previous endoscopy, she was advised to take Prevacid again. (Tr. at 137-38.) It was noted that Plaintiff cared for her parents, one of whom had Alzheimer's, and that she was under a large amount of stress. (Tr. at 140.) A social work consult was ordered to provide options for home health assistance. (Tr. at 141.)

On May 23, 2000, Plaintiff was seen at the Southwest Dallas Medical Clinic for back pain. (Tr. at 117.) Treatment notes stated that Plaintiff performed a lot of lifting. *Id*. A handwritten note in Plaintiff's medical records, dated July 3, 2000, states that x-rays revealed scoliosis and Plaintiff was given samples of medication. (Tr. at 116.) Plaintiff returned to the clinic on August 21, 2000, for back pain and her medication was refilled. (Tr. at 115.) X-rays of Plaintiff's thoracic spine and lumbar spine were performed on August 22, 2000. (Tr. at 112.) Alignment was normal and both views were negative. *Id.* On September 12, 2000, Plaintiff returned to the clinic and was told that she would need to see an orthopedic specialist in order to get further refills of pain medication. *Id*.

On January 15, 2001, Plaintiff was examined by Robert A. Harris, Jr., M.D., F.A.C.P., a consultative examiner. (Tr. at 108-09.) Plaintiff reported having been diagnosed with scoliosis six months prior to the exam. (Tr. at 108.) She complained of interscapular and lower neck pain as well as occasional pain in her left shoulder, which was aggravated by standing for long periods of time. *Id.* Plaintiff also complained of peptic ulcer disease with frequent epigastric discomfort. *Id*. She stated that she had not experienced any weight loss. *Id.* She stated that she was able to perform activities of daily living. *Id*. Examination revealed good motor strength and deep tendon reflexes

were 2+ in both upper and lower extremities. (Tr. at 109.) Straight leg raising test was negative and Plaintiff could squat without difficulty. *Id.* Plaintiff was able to ambulate without any assistive device. *Id.* Plaintiff experienced increased thoracic spine discomfort if she flexed more than forty-five degrees. *Id.* Plaintiff also had mild epigastric tenderness. *Id.* Dr. Harris assessed chronic back discomfort and peptic ulcer disease. *Id.* X-rays of Plaintiff's spine revealed no evidence of scoliosis or mal-alignment. (Tr. at 111.) There were some mild degenerative changes which were consistent with Plaintiff's age. *Id.*

Plaintiff was evaluated by Gerald H. Stephenson, Ph.D., a consultative examiner, on October 23, 2001. (Tr. at 181-88.) Plaintiff complained of depression since developing a bleeding ulcer in 1997. (Tr. at 182.) She stated that she had difficulty concentrating and cried frequently, which interfered with her ability to work. *Id.* Plaintiff had not received any prior mental health treatment. *Id.* Plaintiff stated that she had lost more than fifty pounds and that she did not sleep well at night. *Id.* She performed all the usual activities of daily living, including personal grooming, housekeeping, and shopping. *Id.* Plaintiff claimed to have poor relationships with family and friends. *Id.* Plaintiff was able to focus and follow directions, but might forget complex sequences. *Id.* Plaintiff was generally coherent but at times became confused. (Tr. at 184.) Plaintiff was fearful and obsessed about the health and welfare of her family. *Id.* She stated that she had heard voices a few weeks prior. *Id.* She was mildly dysphoric with appropriate affect. (Tr. at 185.) Plaintiff's general mental ability was average. *Id.* Her remote memory was intact but her short term memory was marginal. *Id.* Dr. Stephenson diagnosed Depressive Disorder Not Otherwise Specified, perhaps in reaction to her physical condition. (Tr. at 187.) Additionally, he listed a provisional diagnosis of Somatization Disorder. *Id.* Dr. Stephenson listed Plaintiff's Global Assessment of Functioning

as 65. (Tr. at 188.) He opined that Plaintiff's depression would improve with appropriate treatment, such as medication and counseling. *Id*.

On November 7, 2001, Plaintiff was admitted to St. Paul Medical Center with a gastric ulcer with acute bleeding and anemia. (Tr. at 197.) Plaintiff had discontinued her proton pump inhibitor and developed abdominal pain with melanotic stool. *Id*. Plaintiff had also recently taken non-steroidal anti-inflammatory drugs. (Tr. at 199.) Plaintiff did not require a blood transfusion. (Tr. at 197.) An epophagogastroduodenoscopy was preformed on November 8, 2001. (Tr. at 198.) Findings were normal esophagus and antral deformity with an area of active ulceration. *Id*. Plaintiff tolerated food well and was discharged with instructions to avoid foods that cause gastric irritation. *Id*. Plaintiff was strongly advised to avoid any non-steroidal anti-inflammatory drugs or aspirin products and to take her proton pump inhibitor twice daily. *Id*. She was discharged from the hospital on November 9, 2001. (Tr. at 197.)

Plaintiff returned to the St. Paul Medical Center emergency room on November 13, 2001, complaining of abdominal pain and dark stools. (Tr. at 218-19.) Plaintiff was given pain medication and advised to follow up with her physician. (Tr. at 219-25.)

3.   Hearing Testimony

At the hearing on September 18, 2001, the ALJ heard testimony from Plaintiff and a Vocational Expert ("VE"). (Tr. at 260-91.) Plaintiff was represented by counsel at the hearing. (Tr. at 260.)

Plaintiff testified that she completed college. (Tr. at 264.) Plaintiff's past work experience included work as a director for home health care, director of public relations, debit manager, and substitute teacher. (Tr. at 264-65, 286.)

-5-

Plaintiff testified that she considered her back pain to be her most severe impairment. (Tr. at 265.) Plaintiff's back pain began after she was in a motor vehicle accident in 1996. (Tr. at 267.) Plaintiff stated that her back pain was treated with physical therapy and medication. *Id.* She took Lortab every four hours for her back pain. (Tr. at 268.) Plaintiff stated that on a scale of zero to ten, with zero being no pain at all and ten being pain strong enough to warrant a trip to the emergency room, the pain in her upper back was constantly at nine, and the pain in her lower back was constantly at seven or eight. *Id.* However, medication would ease the pain to a five. (Tr. at 269.) Plaintiff testified that sitting, standing, lifting, bending, and stretching made her pain worse. *Id.*

Plaintiff also stated that she had an ulcer which had required three hospitalizations since 1999. (Tr. at 272-73.) The ulcer caused pain most of the time. (Tr. at 273.) Prevacid gave her some relief from her pain. (Tr. at 274.) Due to the ulcer, Plaintiff had lost approximately forty pounds during the previous three years. (Tr. at 277.) Plaintiff testified that although she had not experienced an episode of bleeding from the ulcer, it would never heal. (Tr. at 274-75.) Stress increased the pain from the ulcer. (Tr. at 275.) Plaintiff testified that she was under stress from her back problem and because she was the primary care giver to her mother, who had Alzheimer's disease. *Id.*

She had been treated for hypertension for approximately fifteen years. (Tr. at 265.) The hypertension caused weekly headaches which lasted twenty-four hours. (Tr. at 282.)

Plaintiff testified that she had no appetite. (Tr. at 277-78.) She did not sleep well and spent hours at night thinking about how she wished things in her life were different. (Tr. at 278.) After Plaintiff described her difficulty sleeping and agitation to her physician, he prescribed Valium. (Tr. at 279.) Plaintiff did not drive due to her nerves. (Tr. at 281.) Plaintiff had not received any

treatment for her stress because she had not been referred to anyone. (Tr. at 283.)

Plaintiff stated that she spent most of the day attending to her mother's needs. (Tr. at 280.) She also did the housekeeping by doing a little and then resting. *Id*. Plaintiff's father did the cooking and grocery shopping while Plaintiff stayed with her mother. (Tr. at 281.)

The VE testified that Plaintiff's past relevant work included her work as a substitute teacher, though the experience was close to the fifteen year limit. (Tr. at 286.) The VE also noted Plaintiff's past work as a debit manager and as director of public relations. *Id.* The VE was asked whether an individual of Plaintiff's age, education, and work experience, who retained the capacity to perform light work with additional limitations imposed by Plaintiff's ulcer and stress, could return to any of Plaintiff's past relevant work. *Id*. The VE responded

> The jobs that do require some difficult, she mentioned the problems with her back, they do require - - it's not, they're certainly not sedentary jobs that do require the ability to be mobile enough to get to people's homes, because that's where these two types of jobs were performed. With the stress, the jobs themselves aren't necessarily stressful, they do require some decision making, some basic accounting skill work, some (INAUDIBLE). The most important part is good customer service, the ability to communicate orally and in written form, to document the information that she's obtained.

(Tr. at 286-87.) The ALJ next asked the VE to assume an individual with Plaintiff's age, education, and work experience who retained the capacity to perform sedentary work. (Tr. at 287.) The VE testified that Plaintiff's past relevant work, as she performed it, was not sedentary. *Id*. However, the VE opined that such an individual could perform work as a microfilm document preparer and as a circuit layout taper. *Id.* In response to a question posed by Plaintiff's attorney, the VE stated that in responding to the question posed by the ALJ, she had considered only Plaintiff's past work as a debit manager and director of public relations because the job of substitute teacher was so close to the fifteen year limit that she questioned its relevance. (Tr. at 288.)

### *C. ALJ's Findings*

The ALJ issued his decision denying benefits on April 19, 2002. (Tr. at 9-18). In his findings, the ALJ stated that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. (Tr. at 13.) The ALJ concluded that Plaintiff's depression was not a severe impairment. (Tr. at 14.) The ALJ found that Plaintiff did have severe impairments consisting of back disorder with low back pain, gastrointestinal ulcers, and hypertension. *Id*. However, the ALJ found that her impairments did not meet or equal the criteria of any of the listed impairments. *Id*. The ALJ found the objective medical evidence did not provide strong support for Plaintiff's allegations of disabling symptoms and limitations. *Id.* Additionally, the ALJ found that Plaintiff's symptoms were inconsistent with her own testimony. (Tr. at 15.) The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to lift and carry up to twenty pounds occasionally and to stand and walk for six hours in an eight-hour workday. (Tr. at 16.) The ALJ stated that the VE's testimony was that Plaintiff could return to her past relevant work as a substitute teacher as performed by Plaintiff. *Id.* Accordingly, the ALJ found that Plaintiff was not entitled to receive disability benefits. *Id.*

### II. ANALYSIS

### *A. Legal Standards*

### *1. Standard of Review*

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a

scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-344 (5th Cir. 1988).

### *2.    Disability Determination*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.  An individual who does not have a "severe impairment" will not be found to be disabled.

3.  An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

> 4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.
>
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### B.   *Issues for Review*

Plaintiff alleges that substantial evidence does not support the Commissioner's finding that she was not disabled because:

> (1) The ALJ failed to properly consider Plaintiff's past work as a substitute teacher; and
>
> (2) The ALJ failed to properly analyze Plaintiff's mental impairment.

## C. *Issue One: Past Relevant Work*

Plaintiff alleges that the ALJ erred in failing to properly evaluate Plaintiff's past work as a substitute teacher prior to finding that the work was relevant and that she could return to such work. (Pl.'s Br. at 13-19.)

Social Security Ruling 82-61 states that "[u]nder sections 404.1520(e) and 416.920(e) of the regulations, a claimant will be found to be 'not disabled' when it is determined that he or she retains the RFC to perform: 1) The actual functional demands and job duties of a particular past relevant job; or 2) The functional demands and job duties of the occupation as generally required by employers throughout the national economy." Past relevant work is defined as work a claimant has performed within the previous fifteen years that was substantial gainful activity and lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). The fifteen year limit is applied because a "gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply." 20 C.F.R. § 1565(a). "[W]hen making a finding that an applicant can return to his prior work, the ALJ must directly compare the applicant's remaining functional capacities with the physical and mental demands of his previous work." *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994) (citing 20 C.F.R. § 404.1520(e)). The ALJ is required to make clear factual findings on that issue. *Id.* (citing *Abshire v. Bowen*, 848 F.2d 638, 641 (5th Cir. 1988)). "The ALJ may not rely on generic classifications of previous jobs." *Id.* (citing SSR 82-61). Social Security Regulations provide that

> Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary

-11-

>of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62.

In this case, the ALJ concluded that Plaintiff retained the RFC to lift and carry up to twenty pounds occasionally and to stand and walk for six hours in an eight-hour workday. (Tr. at 16.) The ALJ stated that the VE's testimony was that Plaintiff could return to her past relevant work as a substitute teacher as performed by Plaintiff. *Id.* In making his decision, the ALJ mischaracterized the testimony of the VE. In setting forth Plaintiff's past relevant work, the VE noted her experience as a substitute teacher, which was "right on the edge" of the fifteen year limit, and the jobs of debit manager and director of public relations. (Tr. at 286.) However, in responding to the ALJ's question concerning Plaintiff's ability to perform her past relevant work, the VE stated she was considering two jobs that required the mobility to get to people's homes. *Id.* Later, the VE clarified that she had not considered the job of substitute teacher because she had doubts as to its relevance. (Tr. at 288.) Thus, the ALJ's erred in stating that the VE opined that Plaintiff could return to her past relevant work as a substitute teacher.

Additionally, the ALJ made no factual findings as to how Plaintiff's RFC compared with the physical and mental demands of her past work as a substitute teacher. Notably, the ALJ did not question Plaintiff as to the demands of that job as she performed it, nor did he obtain specific information from the VE concerning the demands of the job as generally performed. Such failure is reversible error. *Latham*, 36 F.3d at 484.

Defendant states that to the extent that the ALJ erred in failing to set forth findings as to the exertional demands of Plaintiff's past work as a substitute teacher, the omission did not impact Plaintiff's substantial rights and does not require reversal. (Def.'s Br. at 5.) Even where the record

demonstrates procedural improprieties, a court will not remand unless the substantial rights of a party have been affected. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Remand is appropriate only if the improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Id.* However, a reviewing court may affirm the Commissioner's decision only on the grounds stated in support of the decision. *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002). Here, the Commissioner found Plaintiff not disabled at step four, based on his erroneous interpretation of the VE's testimony. Because substantial evidence in the record does not support the ALJ's finding at step four that Plaintiff could return to her past relevant work as a substitute teacher, remand is required to allow the Commissioner to make a new determination at Step Four.

### D.     *Issue Two: Mental Impairment*

Plaintiff argues that the ALJ erred in failing to properly analyze her mental impairments. (Pl.'s Br. at 17.) In particular, Plaintiff alleges that the ALJ's failure to set forth specific factual findings as to the "special psychiatric review technique" requires reversal. *Id*.

In making a disability determination, an ALJ is required to determine whether a claimant has "impairments" which, singly or in combination, are severe. 42 U.S.C. § 1382c. "For Social Security disability purposes, an 'impairment' is an abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques, and, in fact, must be established by medical evidence, as opposed to the claimant's subjective statement or symptoms." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 867 (E.D. Tex. 2005) (citing 20 C.F.R. § 416.908). When determining whether a claimant's impairments are severe, an ALJ is required to consider the combined effects of all physical and mental impairments without regard to whether any impairment, considered alone, would be of

sufficient severity.  *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citing 20 C.F.R. § 404.1523). If the ALJ does find a medically severe combination of impairments, "the combined impact of the impairments will be considered throughout the disability determination process."  20 C.F.R. § 404.1523.

In evaluating the severity of mental impairments, the ALJ must follow a special technique at each level of the administrative process.  20 C.F.R. § 404.1520a(a).  If an ALJ concludes that a claimant has a medically determinable mental impairment, he must then rate the degree of functional limitation resulting from the impairment.  *Id*.  The degree of functional limitation is rated in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).  If the ALJ rates the degree of limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, the impairment will be found not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities.  20 C.F.R. § 404.1520a(d)(1).  Failure to evaluate all alleged mental impairments in accordance with the procedures described in 20 C.F.R. § 404.1520a is reversible error.  *Satterwhite v. Barnhart*, 44 Fed. Appx. 652, 2002 WL 1396957, *1-2 ( 5th Cir. June 6, 2002).  *See also Selassie v. Barnhart*, 203 Fed. Appx. 174, 176 (9th Cir. Oct 20, 2006); *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005).

The ALJ's decision notes that Plaintiff was found to have a mental impairment by the consultative examiner. (Tr. at 14.)  The ALJ concluded that Plaintiff's mental impairment was not severe "as it does not impose more than a minimal limitation on her ability to perform basic work activities."  *Id.*  Significantly, the ALJ made no findings as to the degree of functional limitation resulting from Plaintiff's mental impairment.  Defendant asserts that remand to remedy this error

would "perform no useful function and would not change the ultimate determination of nondisability." (Def.'s Br. at 7.) However, although the ALJ cited to the consultative examiner's report in concluding that Plaintiff's mental impairment would only minimally limit her ability to work, he did not reference the examiner's finding that Plaintiff's ability to deal with work stress and her ability to understand, remember, and carry out complex job instructions was poor. (*See* Tr. at 189-90.) Had the ALJ assessed the degree of functional impairment imposed by Plaintiff's mental impairment upon her ability to perform basic work activities, he might have more thoroughly addressed the consultative examiner's opinions as to Plaintiff's ability to work and it is possible that his opinion as to the severity of Plaintiff's mental impairment would have been different.

Because the ALJ did not make findings as to the degree of functional limitation resulting from Plaintiff's mental impairment, substantial evidence does not support the ALJ's finding at Step Two that Plaintiff's mental impairment was not severe. Accordingly, remand is required to allow the Commissioner to make a new determination at Step Two.

### III.   RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that the final decision of the Commissioner be **REVERSED** and that the case be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

**SO RECOMMENDED**, on this 29th day of March, 2007.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE